# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO.: 3:25-cv-857-KDB-DCK

|  |  |
|---|---|
| EVOX PRODUCTIONS, LLC<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>LENDINGTREE, LLC,<br><br>　　　　　Defendant/ Third-Party<br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>MARSH USA, LLC,<br><br>　　　　　Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>THIRD-PARTY COMPLAINT AGAINST MARSH USA, LLC</u>

Defendant / Third-Party Plaintiff LendingTree, LLC ("LT"), brings this Third-Party

Complaint against Third-Party Defendant Marsh USA, LLC ("Marsh" or "Third-Party

Defendant"), and alleges as follows:

### <u>INTRODUCTION</u>

1. LT brings this action because it is left with no other avenue to pursue and

preserve its rights against Marsh and ensure the complete adjudication of the parties' claims and

defenses.

2. While eVox has filed claims against LT allegedly worth tens of millions of

dollars, LT has claims against Marsh for breaches of its contractual and fiduciary obligations that

-1-

directly resulted in the loss of LT's insurance coverage, defense funding, and allocation of loss – all of which would have otherwise applied to eVox's claims but for Marsh's breaches.

3. For years, LT has sought to address its claims against Marsh by arbitration to no avail.

4. Marsh has refused to participate in the agreed-to arbitral process, and the Tribunal has refused to hear LT's claims, leaving LT unable to obtain a merits determination of Marsh's liability at a time when that determination is most critical.

5. LT is a leading online marketplace for consumers to comparison shop for financial products. LT enables consumers to make informed financial decisions by comparing rates for loans, credit cards, and other financial products as well as providing free credit reporting, credit monitoring, and strategies for improving their credit.

6. Given its nationwide operations and consumer offerings, LT contracted with Marsh to act as LT's insurance broker and agent to determine appropriate insurance coverage options and policies.

7. Under the parties' broker agreement ("Agreement"), Marsh agreed to assess the availability of LT's insurance coverage, notify LT's insurers of claims for coverage, and assist with litigation management issues, among other obligations.

8. In exchange for these and other services, Marsh received commissions and other compensation based on the insurance products ultimately purchased by LT.

9. LT relied on Marsh's expertise to evaluate coverage, preserve LT's rights under applicable policies, and timely provide notices to carriers when claims arose – particularly where time-sensitive notice requirements could determine whether coverage exists.

10. In February 2022, LT sought Marsh's advice regarding coverage for the specific copyright infringement claims asserted by eVox in this litigation.

11. LT requested – and reasonably expected – that Marsh would identify applicable coverage and ensure timely notice to the relevant carriers so LT could take advantage of the insurance coverage for which it had been paying.

12. Instead of advising LT to file timely notices of claims, Marsh advised LT that its policies would not cover the eVox claims.

13. Relying on Marsh's advice and omissions, notices were not submitted to insurers during the applicable policy period.

14. But Marsh's analysis and guidance turned out to be dead wrong. LT later learned for the first time from its carriers and subsequent broker that coverage would have been available for eVox's claims, but because Marsh failed to submit timely notices, all coverage was denied.

15. This failure falls squarely and solely on Marsh. As LT's broker and agent, Marsh owed contractual and common law duties to provide competent coverage analysis and act on LT's behalf in preserving coverage through timely notice.

16. Marsh breached its contractual and common law duties to LT and caused LT to lose the protection of its insurance, when that protection was vitally needed.

17. Marsh's breaches have also undermined LT's ability to defend itself against eVox's claims.

18. Marsh has refused to participate in LT's defense and the claims-handling processes for which Marsh contracted, depriving LT of the broker assistance and carrier engagement necessary to assess and fund its defense against eVox.

19. The absence of coverage caused by Marsh and its subsequent conduct have materially impaired LT's defense and exposed it to substantial damages in this litigation.

20. In an attempt to seek relief against Marsh, LT initiated arbitration against Marsh before the American Arbitration Association ("AAA") pursuant to the parties' Agreement.

21. There, LT asserted claims for damages and declaratory relief, namely, to determine Marsh's responsibility and obligations in defending LT in its defense against eVox's claims.

22. However, Marsh has refused to participate in the arbitration, and the Tribunal has refused to hear LT's claims for want of jurisdiction – even though LT has suffered actual damages and faces a federal lawsuit for nearing $90 million in alleged damages.

23. Left with no other option, LT brings this Third-Party Complaint to obtain relief for Marsh's breaches and negligence.

## **PARTIES**

24. LendingTree, LLC is a limited liability company with its principal place of business in North Carolina.

25. Lending Tree, LLC is wholly owned by LT Intermediate Company, LLC, a DE entity, which is wholly owned by LendingTree, Inc. which is incorporated in Delaware.

26. Marsh USA LLC provides insurance brokerage services throughout the United States, including in North Carolina.

27. On information and belief, Marsh is wholly owned by Marsh & McLennan Companies, Inc., which is a global insurance broker incorporated in Delaware with its principal place of business in New York.

-4-

## JURISDICTION

28. This Court has supplemental jurisdiction over this action under 28 U.S.C. § 1367(a) because the claims in the Third-Party Complaint are so related to the claims and defenses related to eVox's Complaint that they form part of the same case or controversy.

29. Specifically, the claims in the Third-Party Complaint and eVox's Complaint all concern eVox's claims against LT, and Marsh's violations of its obligations under the brokerage agreement to which LT and Marsh were parties.

30. This Court has specific personal jurisdiction over Marsh because Marsh purposefully availed itself of jurisdiction here by transacting business in North Carolina. *See* N.C. Gen. Stat. Ann. § 1-75.4

31. Marsh has an office in North Carolina, purposefully directed insurance brokerage services in North Carolina, and Marsh's conduct caused foreseeable injury to LT in North Carolina, including but not limited to in connection with coverage and claim-handling for the eVox litigation filed in this Court.

32. Venue is proper in this District under Federal Rule of Civil Procedure 14 and 28 U.S.C. § 1391(b) because this third-party action arises from the same nucleus of operative facts as the underlying action and Marsh may be liable to LT for all or part of eVox's claims against LT in this litigation.

33. While LT and Marsh agreed to arbitrate under the Agreement, Marsh's opposition to arbitration and the Tribunal's refusal to move the matter forward has rendered the arbitral venue unavailable.

-5-

## FACTUAL ALLEGATIONS

### *LT Retains Marsh As Its Broker To Advise On Policy Coverage*

34. In 2019, LT retained Marsh as its insurance broker. *See* Ex. 1, July 11, 2019 Engagement Letter ("Agreement").

35. As LT's insurance broker and agent, Marsh was required to engage in a variety of services that were critical for LT to buy, enforce, and obtain the benefits of its insurance policies. *See id.* § 1 & App'x A.

36. Among other services, Marsh agreed to evaluate the "coverage applicability on all Marsh placed business." *Id.* § 1(p).

37. Marsh also agreed to assist LT with "insurer negotiations," "litigation management issues impacting claim settlements," and "the development of settlement strategies." *Id.*

38. Additionally, Marsh agreed to "prepare loss notices to insurers and notify insurers of claims" for LT. *Id.*

39. In exchange for its services, Marsh received substantial commissions and other compensation tied to the insurance policies and products LT purchased. *Id.* § 2.

40. The Agreement had an initial term of one year. *Id.* § 3.

41. However, the parties continued to operate under the agreement for years after the initial term, and Marsh continued to operate as LT's broker and agent and receive compensation.

42. Indeed, over the course of the parties' years-long relationship, LT paid tens of millions of dollars in premiums, which resulted in Marsh receiving substantial commissions.

43. The Agreement is governed by New York law, and for disputes, provides that the parties may pursue arbitration before the American Arbitration Association ("AAA") and alternatively pursue litigation in New York state and federal courts. *Id.* § 8.

-6-

44.     On February 4, 2022, LT received a claims notice and demand from eVox.

45.     In its notice, eVox alleged LT improperly used eVox's copyrighted images on its website without proper authorization.  *Compare,* ECF No. 1 ("eVox Complaint"), *with* Ex. 2.

46.     eVox identified 131 images that it asserted gave rise to claims for copyright and trademark infringement worth tens of millions of dollars in damages.  Ex. 2.

47.     Promptly after receiving the eVox demand, LT forwarded the demand to Marsh to determine whether LT's policies covered the eVox infringement dispute.  *See* Ex. 3.

48.     LT further requested that Marsh advise on whether LT needed to notify its insurance carriers regarding any claim for coverage and by when.  *See id.*

49.     In response, Marsh advised that any claim for coverage relating to the eVox claims "wouldn't [be a] covered known loss" and that "[c]opyright infringement is excluded from [LT's] GL policy."  *See id.*

50.     While Marsh advised that a claim for coverage based on the eVox demand was excluded from LT's general liability insurance, importantly, it failed to advise whether any of the other lines of coverage for which it served as LT's broker would cover the claim.  *See id.*

51.     Instead, Marsh used the opportunity to propose "another mechanism . . . to provide cover[age] in these circumstances" – in other words, another insurance policy or product – and for which Marsh would receive another commission.  Ex. 3.

52.     Based on Marsh's supposed analysis, LT's insurers were not notified of the claim before September 1, 2022, when the policies expired, despite the fact that the controversy leading to the claim arose in February, 2022.

53. For the following several months after Marsh advised LT it had no applicable coverage, eVox continued to escalate the dispute with LT, making infringement allegations regarding other images that allegedly increased the value of its claims.

### *LT Discovers Marsh's Breaches And Misconduct*

54. In 2023, LT retained a new insurance broker, CAC Specialty ("CAC").

55. CAC promptly notified LT's insurance carriers of the eVox demand to better understand whether LT in fact had coverage options.

56. On June 16, 2023, CAC provided notice of LT's claim for coverage to AIG Specialty Insurance Company ("AIG"). *See* Ex. 6.

57. On July 24, 2023, AIG responded to LT's notice with its coverage determination. *See* Ex. 7.

58. In its response, AIG noted that LT's policy with AIG was effective September 1, 2021, to September 1, 2022 ("the Policy Period"). *See id.*

59. AIG further acknowledged the eVox demand was a "Claim" that LT's Media Content Coverage policy would have covered. *See id.*

60. However, AIG disclaimed coverage for any claim relating to the eVox demand because AIG did not receive timely notice of the claim. *See id.*

61. AIG explained that notice was not provided until June 2023 – after the Policy Period expired. *See id.*

62. Thus, while the AIG policy would have covered eVox's claims, LT lost all of its coverage because Marsh improperly advised LT on its coverage and failed to notify AIG of the eVox demand during the Policy Period.

63. On August 2, 2023, CAC notified all of LT's excess carriers of claims for coverage under LT's various policies for the eVox demand.

64. The carriers uniformly rejected coverage because Marsh – on LT's behalf – failed to provide timely notice to AIG during the Policy Period despite being obligated to do so.

65. After uncovering the egregious failures and negligence by Marsh, LT promptly contacted Marsh to address its conduct and seek its assistance in addressing the matter with its carriers.

66. In response, Marsh repeatedly denied fault or responsibility for LT's loss.

67. Marsh further refused to take steps to cure or mitigate the loss of coverage caused by the late notice to carriers attributable to Marsh.

68. In November 2023, eVox notified LT of its intent to mediate the parties' dispute and provided a proposed complaint – nearly identical to the Complaint eVox eventually filed in this litigation – demanding approximately *$89,729,250* in damages that it intended to pursue should the mediation fail.

69. LT sought Marsh's participation in the mediation given that Marsh's breaches and negligence deprived LT of the insurance coverage that should have funded and supported LT's defense and resolution of the eVox dispute.

70. eVox and LT required clarity as to whether – and in what amount – Marsh would contribute to a resolution given the loss of coverage and Marsh's responsibility for that loss.

71. But Marsh refused, and as a result, the mediation never moved forward because LT and eVox could not meaningfully evaluate settlement in the absence of coverage and without knowing the extent to which Marsh would fund or support a resolution necessitated by its own breaches and negligence.

### *Marsh Refuses To Participate In The Arbitration*

72. On March 8, 2024, LT initiated arbitration against Marsh in the hopes of obtaining an efficient and prompt resolution. *See* Agreement § 8.

-9-

73.    LT asserted claims for breaches of contract and fiduciary duty, negligence, unjust enrichment, and declaratory relief.

74.    For relief, LT sought damages in the form of lost coverage and premiums as well as fees and costs, among other real and actual harms.

75.    It also sought a declaration that Marsh must cover or contribute to LT's defense related to the eVox dispute based on its liability for causing LT's lack of coverage.

76.    Indeed, LT sought clarity on a real, live dispute between the parties – that is, Marsh's obligations and responsibilities for its defense against eVox – before facing a potential judgment.

77.    Yet, the goal of a straightforward resolution was in vain.

78.    From the outset, Marsh refused to participate.  It pursued delay and obstruction through procedural gamesmanship – driving up the time and expense of the arbitration.

79.    As a result, it took *six months* before the Tribunal was even seated.

80.    But even then, Marsh continued to impede forward progress.

81.    Marsh challenged the Tribunal's ability to hear LT's claims on the merits and sought to dismiss the arbitration because the dispute was allegedly not ripe, arguing that arbitration could not proceed unless and until eVox filed suit and obtained a judgment against LT.

82.    On August 8, 2025, following Marsh's refusal to participate and proceed on the merits, the Tribunal stayed the arbitration indefinitely.

### *eVox Files Suit Against LT*

83.    On October 28, 2025, eVox eventually filed this lawsuit against LT, alleging copyright infringement and seeking, among other relief, statutory damages and attorney's fees – just as it had threatened to do months earlier.

-10-

84. With the suit now pending and LT facing active litigation exposure and mounting defense costs, LT promptly notified the Tribunal and requested the arbitration proceed so LT could obtain a timely determination of Marsh's obligations and responsibility.

85. Yet, again, LT hit a dead end in the arbitration. The Tribunal refused to lift the stay and refused to move the arbitration forward for want of jurisdiction.

86. The Tribunal kept the arbitration frozen, still characterizing LT's claims as "premature" notwithstanding that the very event Marsh had demanded as a prerequisite to moving forward with the arbitration – eVox suing LT – had occurred.

87. As a result, LT has been boxed out of the dispute-resolution mechanism the parties agreed to and left without any forum to adjudicate its claims against Marsh while the eVox action proceeds.

88. Determining the nature and extent of Marsh's responsibility is critically important to the orderly and efficient prosecution and resolution of this litigation because, among other reasons, Marsh's conduct is central to the availability of insurance coverage and defense funding, the parties' potential settlement posture, and the ability to evaluate, allocate, and mitigate the substantial defense costs and exposure of LT.

89. But based on Marsh's actions thus far, LT has been precluded from seeking relief pursuant to the parties' Agreement, which is why it now brings this Complaint.

90. Marsh's refusal to arbitrate LT's claims has prevented any adjudication of its obligations and responsibility for LT's defense against eVox's claims through arbitration.

***Marsh's Breaches Have Harmed – And Continue To Harm – LT***

91. Marsh's failure to meet its obligations to LT have resulted in serious and ongoing harm to LT.

92. Marsh failed to analyze and evaluate the "coverage applicability on all" policies it acquired for LT.  Ex. 1, § 1(p).

93. Instead of analyzing LT's policy options in detail, Marsh summarily concluded that LT had no coverage options or policies to address eVox's claims – when in fact LT actually had multiple policies (acquired at the direction of Marsh) that would have applied, according to at least one carrier who had issued such a policy to LT.

94. Marsh further failed to "prepare loss notices to insurers and notify insurers of claims." *Id.*

95. Marsh did not send a single notice to LT's carriers, and instead, concluded LT did not have coverage and allegedly waived its rights.

96. Marsh has further refused to assist LT with "insurer negotiations," "litigation management issues impacting claim settlements," and "the development of settlement strategies." *Id.*

97. Marsh's refusal to participate in efforts to resolve and address the eVox litigation has delayed resolution efforts, increased LT's costs, and deprived LT of the ability to address the litigation efficiently with the benefit of coverage, broker participation, and carrier involvement.

98. eVox's filing of this lawsuit against LT in this Court has further forced LT to incur – and continue to incur – substantial attorney's fees and costs to defend itself in active litigation and face exposure to substantial damages of around $89 million.

99. But for Marsh's negligence and breaches – including its failure to provide timely notice and preserve LT's rights under the applicable policies – LT's defense of eVox's claims in this litigation would have been covered, including the payment of defense costs.

100. These defense costs and litigation burdens are the direct result of Marsh's breaches and misconduct, including Marsh's failure to preserve LT's coverage and its ongoing refusal to provide the claims-related assistance it promised – failures that have increased LT's exposure, weakened its defense posture, and made adjudication materially more expensive and difficult.

101. As a result of Marsh's breaches and misconduct, LT continues to suffer additional damages.

102. Even though it has paid well over $9 million in insurance premiums, LT has missed out on critical coverage worth tens of millions of dollars to address eVox's claims and lawsuit, including the benefits of insurer-funded defense, carrier engagement, and meaningful risk transfer.

103. LT has been deprived of the benefit of its policies because of Marsh's negligence and breaches, leaving it exposed to this lawsuit seeking in excess of $89 million, as well as ongoing defense costs and potential liability that should have been covered or materially mitigated.

104. Accordingly, LT commences this action to obtain all necessary and appropriate relief for Marsh's breaches and unlawful conduct, including damages, declaratory relief, attorney's fees and costs, and all other available and appropriate relief.

## CAUSES OF ACTION

### COUNT I
**(Breach Of Contract Under New York Law)**

105. LT repeats and incorporates the allegations in Paragraphs 1 through 104 of this Complaint as if set forth fully herein.

106. The parties entered a valid, binding, and enforceable Agreement.

107.    LT fully performed its obligations under the Agreement.

108.    Marsh further received compensation under the Agreement.

109.    Pursuant to Section 1(p) of the Agreement, Marsh agreed to provide "claims-related services" to LT.

110.    Among other services, Marsh agreed to "evaluate coverage applicability on all Marsh placed business," "[a]ssist . . . in the development of settlement strategies," "prepare loss notices to insurers and notify insurers of claims," and "assist . . . with litigation management issues that impact claim settlements" on LT's behalf.  Ex. 1.

111.    Further, implicit in all contracts, including the Agreement, is a covenant of good faith and fair dealing in the course of contract performance.

112.    Marsh breached the Agreement by failing to correctly and properly advise LT of the availability of insurance coverage in accordance with the terms of the Agreement.

113.    Marsh further breached the Agreement by failing to prepare a loss notice or notify LT's insurers of a claim for coverage.

114.    Marsh continues to breach the Agreement by refusing to aid LT in its ongoing dispute with eVox despite maintaining an obligation to do so.

115.    Marsh's foregoing conduct further constitutes a breach of the implied covenant which is implicit in and applies to the Agreement.

116.    LT has suffered and continues to suffer ongoing harm as a result of Marsh's breaches and unlawful conduct.

117.    Among other harms, LT has been denied critical coverage to address eVox's claims and has been deprived of the expertise and consulting services for which Marsh contracted to provide.

-14-

118. LT is entitled to damages and declaratory relief from Marsh, as well as all other remedies provided under applicable law, as set forth in its Prayer for Relief.

## COUNT II
### (Breach Of Fiduciary Duty Under New York Law)

119. LT realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 118 of this Complaint as if fully set forth herein.

120. As LT's insurance broker, Marsh acted as LT's agent and owed LT fiduciary duties of loyalty and due care.

121. Based on the parties' fiduciary relationship, Marsh maintained a duty to advise and guide LT on its insurance coverage options and activities.

122. LT sought and relied on Marsh's expertise in a manner consistent with the fiduciary relationship between the parties.

123. When it erroneously advised LT that eVox's claims were not a covered known loss under any of its insurance policies, Marsh acted as an agent of LT.

124. Marsh further acted as LT's agent when it decided not to send notices of claim to LT's insurance carriers to seek coverage under its policies.

125. By failing to advise LT of the availability of insurance coverage for eVox's infringement claim, Marsh failed to use the reasonable care required of it as LT's fiduciary.

126. Marsh's breach of its duty of care was the direct and proximate cause of LT's inability to obtain insurance coverage in connection with the eVox demand, the subsequent denial of coverage by AIG and other insurers, and all resulting damages flowing from LT's inability to recover for all past and future defense costs, fees, and expenses incurred in defending against eVox's claim.

-15-

127. Due to Marsh's breach, LT has incurred substantial attorney's fees in trying to resolve and defend itself in this litigation filed by eVox and lost access to critical coverage it paid for, among other serious harms.

128. LT is entitled to damages and declaratory relief from Marsh, as well as all other remedies provided under applicable law, as set forth in its Prayer for Relief.

## COUNT III
### (Negligence Under New York Law)

129. LT realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 128 of this Complaint as if fully set forth herein.

130. As LT's insurance broker, Marsh maintained a duty to advise LT as to the availability of existing or additional coverage.

131. When assessing whether or not to submit a claim to its insurers in connection with eVox's claims, LT sought and relied upon Marsh's expertise in a manner consistent with the special relationship between the parties.

132. By erroneously failing to advise LT of the availability of insurance coverage for eVox's infringement claim, Marsh breached the applicable standard of care.

133. Marsh's professional negligence was the direct and proximate cause of LT's inability to obtain insurance coverage in connection with the eVox demand, the subsequent denial of coverage by AIG and other insurers, and all resulting damages flowing from LT's inability to recover for all past and future defense costs, fees, and expenses incurred in defending against eVox's claim.

134. The insurance coverage available under the AIG policy was within direct contemplation of the parties when LT retained Marsh as its insurance broker.

-16-

135. The coverage available under the various excess liability policies was also known to Marsh at the time the parties entered the Agreement.

136. Due to Marsh's breach, LT has incurred substantial attorney's fees in addressing this litigation filed by eVox and lost access to critical coverage it paid for, among other serious harms.

137. LT is entitled to damages and declaratory relief from Marsh, as well as all other remedies provided under applicable law, as set forth in its Prayer for Relief.

## COUNT IV
### (Unjust Enrichment Under New York Law)

138. LT realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 137 of this Complaint as if fully set forth herein.

139. LT has conferred substantial benefits on Marsh in the form of millions of dollars of commissions tied to insurance products LT purchased at the direction of Marsh.

140. Equity and good conscience require Marsh to compensate LT for the substantial benefits LT has conferred on it and for the fact LT has derived no benefit from Marsh.

141. LT is entitled to restitution from Marsh, declaratory relief, as well as all other relief provided under applicable law.

## COUNT V
### (Declaratory Judgment Pursuant To 28 U.S.C. § 2201)

142. LT realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 141 of this Complaint as if fully set forth herein.

143. An actual and justiciable controversy exists concerning whether Marsh has breached the Agreement by failing to fully and accurately evaluate the applicability of insurance coverage for eVox's infringement claim and failing to provide notice of the claim to LT's insurers.

-17-

144. An actual and justiciable controversy also exists concerning whether Marsh has breached and continues to breach the Agreement by refusing to engage and assist with the eVox dispute despite LT's repeated requests.

145. An actual and justiciable controversy also exists concerning whether Marsh's acts and omissions caused LT to lose its insurance coverage for the eVox claim and to incur or face uninsured losses, defense costs, and settlement exposure.

146. An actional and justiciable controversy also exists concerning whether Marsh is liable for and must indemnify LT for the costs, losses, and damages LT has incurred and will incur in connection with this litigation, including but not limited to defense costs, settlement amounts, judgments, and other related damages, to the extent such amounts would have been covered but for Marsh's acts and omissions.

147. An actual and justiciable controversy also exists concerning whether Marsh is liable to LT for its loss of insurance coverage for the eVox claim.

148. LT alleges Marsh has breached and continues to breach the Agreement in the foregoing respects, while Marsh disputes LT's allegations and contends it has satisfied any duties owed to LT.

149. Pursuant to 28 U.S.C. § 2201, a judicial determination of the respective rights and obligations of the parties under the Agreement is necessary and appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant/Third-Party Plaintiff LendingTree, LLC prays for this Court to enter judgment against Marsh granting the following relief:

1. Declarations that Marsh:

    a. Breached the Agreement by failing properly to advise LT regarding the availability and applicability of insurance coverage for the eVox

-18-

claim and by failing to provide timely notice to LT's insurers of the eVox claim for coverage;

b. Breached its professional duty of care owed to LT by failing properly to advise LT regarding the availability and applicability of insurance coverage for the eVox claim and by failing to provide timely notice to LT's insurers of the eVox claim for coverage;

c. Breached its fiduciary duties owed to LT, including its duty to exercise due care when acting as LT's agent, by failing properly to advise LT regarding the availability and applicability of insurance coverage for the eVox claim and by failing to provide timely notice to LT's insurers of the eVox claim for coverage; and

d. Was unjustly enriched at LT's expense by collecting commissions derived from LT's insurance placements while failing to provide the services owed to LT under the Agreement, including appropriate coverage advice and notice-related services.

e. Is liable for and must indemnify LT for the costs, losses, and damages LT has incurred and will incur in connection with this litigation including but not limited to defense costs, settlement amounts, judgments, and other related damages, to the extent such amounts would have been covered but for Marsh's acts and omissions.

2. Damages in an amount to be proven at trial;

3. Statutory damages, including multipliers and equitable enhancements, as permitted by law;

4. Disgorgement by Defendant of all ill-gotten gains, as permitted by law;

5. Punitive damages in an amount to be proven at trial;

6. Attorney's fees and costs, as permitted by law;

7. Pre-judgment and post-judgment and other interest on all monetary damages, as permitted by law; and

8. Any and all such further relief the Court deems just and proper.

-19-

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, LT hereby demands a trial by jury in this action on all issues so triable as of right.

Dated: June 25, 2026

By:    */s/ Tricia Wilson Magee*

Tricia Wilson Magee (N.C. Bar No. 31875)
SHUMAKER, LOOP & KENDRICK, LLP
101 S. Tryon Street, Suite 2200
Charlotte, NC 28280
Telephone: 704-375-0057
Facsimile: 704-332-1197
tmagee@shumaker.com

Paul Werner (admitted *pro hac vice*)
Imad Matini (admitted *pro hac vice*)
Alexandra Bustamante (admitted *pro hac vice*)
SHEPPARD LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
Telephone: 202-747-1931
Facsimile: 202-747-3817
pwerner@sheppard.com
imatini@sheppard.com
abustamante@sheppard.com

Michael J. Zinna (admitted *pro hac vice*)
Stephanie A. Carroll (admitted *pro hac vice*)
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Telephone: 212-808-7800
Facsimile: 212-808-7897
mzinna@kelleydrye.com
scarroll@kelleydrye.com

*Attorneys for Defendant/Third-Party Plaintiff
LendingTree*

-20-