**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00857-KDB-DCK**

**EVOX PRODUCTIONS LLC,**

**Plaintiff,**

**v.**

**LENDINGTREE, LLC, ET AL.**

**Defendants,**

---

**LENDINGTREE, LLC**

**Third-Party Plaintiff**

**v.**

**MARSH USA, LLC**

**Third-Party Defendant**

## MEMORANDUM AND ORDER

**THIS MATTER** is before the Court on Third-Party Defendant Marsh USA, LLC's ("Marsh") Motion to Dismiss LendingTree, LLC's Third-Party Amended Complaint (Doc. No. 53). After carefully considering the motion and the related briefs and exhibits filed in support and in opposition, the Court finds that Marsh served as an insurance broker for LendingTree pursuant to an agreement in which they agreed to resolve any dispute between them related to Marsh's services through arbitration. For that reason and others discussed below, the Court will **GRANT** the motion.

## I. LEGAL STANDARD

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) addresses whether the court has subject-matter jurisdiction to hear the dispute. *See* Fed. R. Civ. P. 12(b)(1). "Whether the parties have agreed to arbitrate their disputes is a jurisdictional question," and where all of the claims at issue in a lawsuit are arbitrable, the court may dismiss the lawsuit for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Wake Cnty. Bd. of Educ. v. Dow Roofing Sys., LLC*, 792 F. Supp. 2d 897, 900 (E.D.N.C. 2011); *see also Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Emp. v. Norfolk S. Ry. Co*., 143 F.2d 1015, 1017 (4th Cir. 1944) ("Arbitration deprives the judiciary of jurisdiction over the particular controversy and the courts have long ruled that there must be strict adherence to the essential terms of the agreements to arbitrate."); *Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc*., 252 F.3d 707, 709-10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.").

Federal policy strongly favors arbitration, and the Federal Arbitration Act ("FAA") represents "a liberal federal policy favoring arbitration agreements" and applies "to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Urgent Care of Mountain View, PLLC v. Intermedix Corp*., No. 519CV00109KDBDCK, 2020 WL 564028, at *1 (W.D.N.C. Feb. 4, 2020). Under the FAA, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. At the same time, it is well settled that a "party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Levin v. Alms & Assocs., Inc.,* 634 F.3d 260, 266 (4th Cir. 2011) (quotation omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court, however, accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cty., N. Carolina*, No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

When deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). The Court may also consider documents attached to a motion to dismiss when they are "integral

and explicitly relied on in the Complaint," and where "plaintiffs do not challenge [the document's] authenticity."[1] *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015).

## II. FACTS AND PROCEDURAL HISTORY

LendingTree is an online exchange that connects consumers seeking loan products with lenders. (Doc. No. 1 ¶ 11). In this action, Plaintiff EVOX Productions, LLC ("EVOX") claims that LendingTree used EVOX's copyrighted images without license or authorization. LendingTree's Third-Party Amended Complaint and the present motion relates to a dispute between LendingTree and Marsh, its insurance broker, over whether LendingTree should have had insurance coverage for EVOX's copyright claims.

For many years, Marsh served as LendingTree's insurance broker. LendingTree alleges that under the parties' July 2019 Agreement (the "Agreement"), Marsh agreed to "assess the availability of [LendingTree's] insurance coverage, notify LT's insurers of claims for coverage, and assist with litigation management issues, among other obligations." (Doc. No. 52 ¶ 7; Doc. No. 52-1). The Agreement contains an arbitration provision requiring that "any dispute, claim or controversy arising out of or relating to this Agreement or the provision of services by Marsh . . . shall be resolved by binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association." (Doc. No. 52 § 8). The Agreement also contains choice-of-law and forum selection clauses that provide that "the laws of the State of New York govern" and that "[a]ny litigation or other proceedings arising from or relating to this Agreement . . . shall be brought in the state or federal courts located in the State of New York, County of New York." *Id.*

In 2022, EVOX made its first demand on LendingTree alleging copyright infringement. (Doc. No. 55-2). LendingTree and Marsh dispute who is responsible for the delay, but it was not until 2023 when LendingTree retained a new insurance broker, who reviewed Marsh's policies

and notified AIG Specialty Insurance Company ("AIG") of the EVOX Demand Letter, asserting a claim under AIG's Specialty Risk Coverage Policy. AIG denied coverage because notice was not provided until after that policy had expired. (Doc. No. 52 ¶¶ 54-61).

After a mediation of the EVOX claim against LendingTree had been requested in late 2023, LendingTree filed an arbitration demand with the American Arbitration Association ("AAA") pursuant to the Agreement in March 2024 (the "Arbitration"). The arbitration demand asserted claims against Marsh for breach of contract, breach of fiduciary duty, negligence, unjust enrichment, and declaratory judgment based on the allegations that Marsh, as LendingTree's broker, failed to advise LendingTree of available coverage and failed to notify its insurers of the EVOX claim. (*See* Doc. No. 55-2).

After a dispute involving the selection of the arbitration panel was resolved (in LendingTree's favor), Marsh asked the panel to stay the arbitration as premature because EVOX had not sued LendingTree and no mediation had gone forward. In January 2025, after considering written and oral arguments, the arbitration panel authorized Marsh to move to dismiss or stay the arbitration on the ground that LendingTree's claims against it were premature. (*See* Doc. No. 52-15). Marsh filed the motion, which was fully briefed and orally argued. In August 2025, the arbitration panel issued a written Order on Dispositive Motion and Interim Award, finding under New York law that LendingTree "failed to establish that its claims against Marsh in this Arbitration present a justiciable controversy." (Doc. No. 52-20). The panel retained jurisdiction over the parties' dispute, stayed the proceedings pending further order, and asked the parties to notify the panel of future developments, including "any changes in the status of the dispute between the Parties" and "any changes in the status of the dispute between LendingTree and eVox." (*Id*).

In late October 2025, EVOX filed this action against LendingTree. (Doc. No. 1). Shortly following EVOX's Complaint, in early November 2025, LendingTree updated the arbitration panel that it had been sued by EVOX. LendingTree moved to lift the stay, arguing that the filing of the EVOX Complaint made the arbitration ripe to proceed. (Doc. No. 52-21). Marsh opposed the motion to lift the stay on the grounds that LendingTree still had not shown that it had incurred any actual, recoverable damages or that it had satisfied the $500,000 self-insured retention/deductible in the AIG Policy (such that Marsh—who was alleged to be standing in the insurer's shoes for legal purposes—would be responsible for any damages). *Id*. at 8-9. In February 2026, the arbitrators again denied LendingTree's motion to lift the stay, holding that the arbitration "remains premature" and that the initiation of a lawsuit by EVOX did not, in and of itself "obviate the prematurity of this arbitration." (Doc. No. 52-23). It continued the stay and directed the parties to report by August 5, 2026 "whether there have been (1) any changes in the status of the dispute between the Parties; (2) any changes in the status of the dispute between LendingTree and eVox; and (3) any material developments in the lawsuit between LendingTree and eVox." *Id*. at 3.

On May 19, 2026, LendingTree sent a Notice of Voluntary Dismissal to the Arbitrators "direct[ing] the Tribunal and AAA to immediately close this arbitration," alleging that the panel had an "avowed lack of jurisdiction and refusal to move the arbitration forward on the merits." (Doc. No. 52-24). On May 21, 2026, Marsh's counsel wrote to the arbitration panel expressing its concern that a dismissal without prejudice would allow LendingTree to "refile the Arbitration and seek a new Panel." (Doc. No. 52-26). On June 12, 2026, the AAA informed the parties that it was closing the file. (Doc. No. 52-30). On June 26, 2026, LendingTree filed its Original Third-Party Complaint against Marsh in this Court, asserting the same five claims it had previously asserted in its Demand for Arbitration. It then amended that Complaint without any substantive changes on

August 10, 2026. (Doc. Nos. 30, 52). Marsh moved to dismiss the Original Third-Party Complaint and then the Amended Third-Party Complaint. That latter motion is, after full briefing, ripe for the Court's ruling. (Doc. Nos. 39, 53).

## III. DISCUSSION

Marsh advances several arguments in support of its Motion to Dismiss, but the Court need only decide Marsh's first and primary contention[1]—that LendingTree's insurance broker claims against Marsh must be brought in arbitration rather than as third-party claims in this action. And the answer to that question is found in the plain language of LendingTree and Marsh's broker Agreement. That Agreement requires that "[a]ny dispute arising out of or relating to this Agreement or the provision of services by Marsh or its affiliates" be resolved by binding arbitration before the AAA. Doc. No. 52 § 8.

The FAA obligates courts to enforce written arbitration agreements according to their terms. 9 U.S.C. § 2. The Supreme Court has repeatedly emphasized that arbitration agreements must be rigorously enforced and that any doubts concerning arbitrability must be resolved in favor of arbitration. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) ("[W]e have often observed that the Arbitration Act requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted.'") (quoting *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013)).

LendingTree does not challenge the enforceability of the arbitration requirement in the Agreement nor that the scope of that provision encompasses its claims against Marsh. Indeed, as discussed in detail above, LendingTree has already pursued an arbitration against Marsh on the

[1] The Court does not reach and expresses no opinion on Marsh's other arguments.

same claims it asserts here. Instead, LendingTree argues that it should be permitted to avoid arbitration because "Marsh has refused to participate in the arbitration, and the Tribunal has refused to hear LT's claims for want of jurisdiction," leaving it with "no other option" but to bring this action. (Doc. No. 52 ¶¶ 22, 23). However, that description of the earlier arbitration proceedings is inaccurate. The arbitration panel twice ruled—after extensive briefing and oral argument—that LendingTree's claims were premature, not that it lacked jurisdiction to hear LendingTree's claims. In other words, LendingTree will be permitted to arbitrate its claims against Marsh when those claims become ripe, as determined by the arbitrators. And the decision on when the claim is ripe for arbitration under the Agreement is plainly within the scope of the arbitrators' authority and cannot be undermined by the Court.

Finally on this point, LendingTree's voluntary decision to dismiss its stayed arbitration cannot divest the arbitration panel of jurisdiction nor alter LendingTree's contractual obligation to proceed in arbitration. In sum, LendingTree agreed to arbitrate any claims against Marsh related to its insurance brokerage services and will be held to that agreement. *See Tobacco Workers Int'l Union, Loc. 317 v. Lorillard Corp.*, 448 F.2d 949, 957 (4th Cir. 1971) (holding that in deciding whether there is an agreement to arbitrate, a judge "take care to steer clear of the questions that the parties have agreed to settle through the arbitrator. If he does not, he becomes an instrument of a breach of the agreement.").

LendingTree also makes a secondary argument that—notwithstanding the clarity of the arbitration provision—the Agreement permits claims to be filed in both courts and arbitration based on the Agreement's forum-selection clause, which mandates the filing of any litigation related to the Agreement in New York. However, that provision does not create a separate, equal path to litigation. Rather, it only requires that legal proceedings outside of arbitration—for

example, an action to enforce an arbitration award or to challenge the enforceability of the arbitration provision itself—must be filed in New York. Therefore, the forum-selection clause does not change LendingTree's obligation to arbitrate any dispute about the quality of Marsh's services, and LendingTree's third-party claims will be dismissed without prejudice so they may be arbitrated in accordance with the Agreement. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc*., 252 F.3d 707, 709-10 (4th Cir. 2001) (holding "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable").

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Third Party Defendant's Motion to Dismiss (Doc. No. 53) is **GRANTED**;
2. LendingTree's Third-Party claims are **DISMISSED**; and
3. The stay of this action (Doc. No. 61) is lifted, so that the Plaintiff's claims can promptly proceed towards a resolution of the merits of its claims in the absence of a voluntary resolution of the dispute among the Parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: November 18, 2026

Kenneth D. Bell
United States District Judge